UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
FOURTH DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, EX REL. JEANNE KOENES,<br><br>                      Plaintiff,<br><br>vs.<br><br>ALLINA HEALTH SYSTEM,<br><br>                      Defendant. | Civil File: 98-2428 RHK/JMM<br><br>**JURY TRIAL DEMANDED**<br><br>~~FILED IN CAMERA and UNDER~~ SEAL |

## COMPLAINT

This action is brought on behalf of the United States of America by Jeanne Koenes against Allina Health System pursuant to the qui tam provisions of the Civil False Claims Act, 31 U.S.C. §§ 3729-33.

**PARTIES AND VENUE**

1. The government of the United States of America.

2. Relator Jeanne Koenes ("Koenes") is a citizen of the United States of America who resides at 7578 Sunset Avenue, Lino Lakes, Minnesota, 55014 in the District of Minnesota. Koenes was employed by Defendant Allina Health System ("Allina") from May 1990 until October 19, 1998, most recently as Director of Third Party Relations.

3. Allina Health System is a Minnesota corporation with its principal place of business at 5601 Smetana Drive, Minneapolis, Minnesota, 55440, in the District of Minnesota. Venue is

FILED NOV 10 1998
FRANCIS E. DOSAL CLERK
JUDGMENT ENTERED
DEPUTY CLERK'S INITIALS



proper in the District of Minnesota pursuant to 28 U.S.C. §§ 1391(b)(1) and (2) and 31 U.S.C. § 3732(a).

## JURISDICTION

4.   This claim arises under the federal Civil False Claims Act, 31 U.S.C. §§ 3729-33, a law of the United States. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 and 31 U.S.C. § 3732 (a) and (b).

## FACTS

5.   Title XIX of the Social Security Act (Title 42, U.S.C. § 1395 et seq. and § 1396 et seq.) established the federal Medicare and Medicaid programs, administered in part through the State of Minnesota, and through which Defendant Allina receives reimbursement for services to Medicare and Medicaid-eligible patients.

6.   Minnesota Statutes 256B et seq. governs the Minnesota State portion of the Medicaid program.

7.   Koenes was first employed by Allina as a Nurse Auditor in 1990. In 1993, Koenes was promoted to the position of Revenue Manager. In 1994, Koenes was promoted to the position of Director of Third Party Relations.

8.   In her position as Director of Third Party Relations, Koenes was responsible for overseeing the documentation portion of (internal) compliance audits, physician education (based on audit results), and researching compliance issues.

9.   In her position as Director of Third Party Relations, Koenes was also involved in compliance audits for Defendant Allina's hospital-based clinics and Allina's free-standing clinics.

10. Koenes was also a member of Defendant Allina's Compliance Oversight Committee. As a member of this Committee, Koenes had knowledge of compliance issues regarding hospitals and physician services, as well as her own area (hospital based clinics and free standing clinics).

11. Relator did not have the authority to make decisions regarding Defendant Allina's compliance and refunding policies, nor did she do so as part of her duties.

12. In or about August of 1993, the Compliance Oversight Committee was instructed by the U.S. Government to audit Defendant Allina's charging and billing practices.

13. For the period 1993 through 1996, the Compliance Oversight Committee produced annual reports on Defendant Allina's charging and billing practices. These reports were produced via a statistically valid sample methodology as required by the U.S. Government.

14. The 1993-1996 audit covered hospitals ("Hospital Facilities"), hospital-based clinics and free-standing clinics ("Clinics"); and all physician services provided through the Hospital Facilities and Clinics ("Physician Services").

15. The 1993-1996 audit revealed substantial overbilling (also called duplicate billing) and upcharging (also called upcoding) which would have required significant repayment to the Medicare and Medicaid programs under governing federal and state statutes.

16. The Compliance Oversight Committee was never informed that Defendant Allina refunded the overpaid amounts to Medicare and Medicaid, as required by federal and state law.

17. On information and belief, Defendant Allina failed to fully refund the overpaid amounts revealed by the 1993-1996 audit.

18. Defendant Allina has also engaged and may continue to engage in the following improper billing practices:

A. Defendant Allina failed to require physician orders as part of claims for reimbursement from Medicare and Medicaid, as required by law.

B. In its hospital facilities, Defendant Allina failed to audit for the presence of physician orders for claims during the 1993-1996 audit period;

C. In 1996 and following, Defendant Allina started auditing claims for physician orders. As a result of these audits, claims for at least half of all Defendant Allina facilities were found to be defective (and therefore nonreimbursable) for lack of a physician order. Although, Defendant Allina adjusted the billing for the specific claims found to be nonreimbursable, it did not project that error rate or otherwise evaluate other claims for purposes of refunding improperly reimbursed claims to Medicare and Medicaid.

D. Abbot Northwestern Hospital (an Allina facility) engaged in a pattern and practice of improperly adding extra charges for a particular service, in violation of Medicare and Medicaid regulations.

E. Defendant Allina allowed its clinic, Minneapolis Cardiology Associates, to bill Medicare and Medicaid for services performed by MCA's mobile unit at the same time that those services were billed by Defendant Allina's regional hospitals. On information and belief, Defendant Allina refunded those duplicate billings only if brought to the attention of Customer Service by a patient. Further, Defendant Allina failed to perform an audit of Minneapolis Cardiology Associates in light of these significant duplicate billings.

19. For the period 1996 to 1998, the Compliance Oversight Committee produced audit reports on Defendant Allina's charging and billing practices, again, in the following areas: Hospital Facilities, Clinics, and Physician Services.

20. Defendant Allina's 1996 to 1998 auditing procedures were defective many in areas, including but not limited to, the following:

   A. On information and belief, Defendant Allina did not use a statistically valid sampling methodology for performing its audits. For example: 1) Defendant Allina audited only ten (10) out of thousands of claims per physician per year; 2) Defendant Allina allowed the physician clinics to pre-select the ten claims to be audited; 3) Defendant Allina identified overbilling and overcharges on those ten claims only, and it failed to project error rates or otherwise evaluate the physician's remaining billings in light of the audit results for the ten claims;

   B. On information and belief, Defendant Allina failed to require follow up audits for those facilities found to have overbilled and overcharged, except for those revealing an error rate of thirty percent (30%) or above.

   C. Defendant Allina also failed to audit in-patient visits to free-standing clinics, a major service area for Defendant Allina and one consistently shown through prior audits to have the highest error rate for overbilling and overcharging.

21. Nonetheless, Defendant Allina's 1996-1998 reports revealed substantial overbilling and overcharging, sometimes at rates of up to forty percent (40%).

22. On information and belief, federal law requires overpayment of any and all overcharges and overbillings.

23. Defendant Allina's Oversight Compliance Committee was never informed of any refunds provided by Defendant Allina to Medicare or Medicaid.

24. On or about July 1998, discussions of the audit results and the resulting need for refunds were held in an Oversight Compliance Committee meeting. At that time, one of Defendant Allina's vice presidents for auditing informed the Oversight Committee that Defendant Allina had made no refunds to Mediare or Medicaid. Rather, he stated that the audit materials showing the need for refunds were stored "in a box" in his office.

25. On information and belief, Defendant Allina has failed to refund, and continues to fail to refund, monies owed to the Medicare and Medicaid programs due to overbilling and overcharging.

## COUNT I
## VIOLATION OF FALSE CLAIMS ACT 31 U.S.C. § 3729

26. The foregoing paragraphs are incorporated into this Count as if fully set forth herein.

27. This is a civil action brought by Koenes on behalf of the United States against Allina Medical System under the False Claims Act, 31 U.S.C. §§ 3729(a)(1), (2), (3), and (7).

28. Defendant Allina Health System knowingly presented or caused to be presented, and may still be presenting or causing to be presented, to Medicaid and Medicare false or fraudulent claims for payment, in violation of, inter alia, 31 U.S.C. § 3729(a)(1).

29. Defendant Allina knowingly makes, uses, or causes to be made or used, and may still be making, using or causing to be made or used, false or fraudulent records and statements to get false or fraudulent claims paid or approved, in violation of inter alia, 31 U.S.C. § 3729(a)(2).

6

30.  Defendant Allina conspired to and may still be conspiring to defraud the U.S. Government by getting a false or fraudulent claim allowed or paid, in violation of <u>inter alia</u> 31 U.S.C. § 3729(a)(3).

31.  Defendant Allina knowingly makes, uses, or causes to be made or used, and still may be making, using or causing to be made or used, a false record or statement to conceal, avoid, or decrease an obligation to pay or transmit money or property to the U.S. Government, in violation of <u>inter alia</u> 31 U.S.C. § 3729(a)(7).

32.  The United States of America, previously unaware of the falsity of the claims and/or statements by Defendant Allina, and in reliance on the accuracy of these claims and/or statements, paid and may continue to pay for services provided to Medicare and Medicaid recipients and may continue to fail to demand refunds in reliance on those statements.

33.  As a result of the actions of Defendant Allina, the United States of America has been, and may continue to be, severely damaged.

## PRAYER FOR RELIEF

WHEREFORE, Relator prays for judgment against Defendant for the following relief:

1.  That Defendant Allina be ordered to cease and desist from submitting any more false claims or violating 31 U.S.C. § 3729 et seq.;

2.  That judgment be entered in Relator's favor and against Defendant Allina in the amount of each and every false or fraudulent claim multiplied as provided for in 31 U.S.C. § 3729(a), plus a civil penalty, of not less than five thousand dollars ($5,000) or more than ten thousand dollars ($10,000), per claim as provided for by 31 U.S.C. § 3729 (a), to the extent that these multiplied penalties shall fairly compensate the United States for losses resulting from the various schemes

undertaken by Defendant, together with penalties for specific claims to be identified at trial after full discovery;

3. That Relator be awarded the maximum amount allowed pursuant to 31 U.S.C. § 3730 (d);

4. That judgment be granted for Relator and against Defendant Allina for any costs, including, but not limited to, court costs, expert fees, investigative expenses, and all attorney fees incurred by Relator in the prosecution of this suit; and

5. That Relator be granted such other and further relief as the Court may deem just and equitable.

Dated: Nov. 10, 1998

MESSERLI & KRAMER P.A.

*Teresa K. Patton*

James C. Wicka, #17063X
Teresa K. Patton, #205679
1800 Fifth Street Towers
150 South Fifth Street
Minneapolis, MN  55402-4218
Telephone: (612) 672-3600

ATTORNEYS FOR RELATOR

378825_1